fUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JUDY M. JOHNSON,                        )
                                        )
                Plaintiff,              )
                                        )
v.                                      )        No. 3:17-cv-374-DCP
                                        )
NANCY A. BERRYHILL,                     )
Acting Commissioner of Social Security, )
                                        )
                Defendant.              )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 16].  Now before the Court are

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 19-1] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21].  Judy

M. Johnson ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge

("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner").  For the

reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's

motion.

## I.      PROCEDURAL HISTORY

On October 26, 2011, Plaintiff filed an application for disability insurance benefits

pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, as well as supplemental

social security income pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*

[Tr. 10].  After both applications were denied at the initial level of the agency's review, Plaintiff

did not appeal the decision.  [*Id.*].

Then, on January 24, 2013, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of disability that began on January 1, 2007. [*Id.*]; *see* [Tr. 86]. The ALJ declined to re-open either of the 2011 applications. [Tr. 10]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 122]. A hearing was held on July 21, 2015. [Tr. 30–64]. On April 15, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 10–22]. The Appeals Council denied Plaintiff's request for review on June 20, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on August 23, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since January 24, 2013, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: spine disorder with grade I spondylolisthesis at L5/S1, osteoarthritis and bursitis in the left knee, asthma, affective disorder and anxiety disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and carry ten pounds frequently and 20 pounds occasionally. In

an eight-hour workday, the claimant can sit for eight hours, stand for four hours and walk for four hours. The claimant is able to understand, remember and carry out simple and detailed instructions. She can maintain concentration and persistence for the above tasks. The claimant is able to adapt to gradual and infrequent changes in the work setting. She is limited to work that requires only frequent interactions with the public, co-workers and supervisors.

5. The claimant is capable of performing past relevant work as a Companion. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since January 24, 2013, the date the application was filed (20 CFR 416.920(f)).

[Tr. 12–22].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to

4

last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence in several regards. First, Plaintiff asserts that the ALJ failed to properly weigh the medical opinions in her RFC determination, claiming "in general," that that the ALJ's weight determinations are "confusing, scattered, and somewhat arbitrary." [Doc. 19-1 at 16]. Moreover, Plaintiff claims that the ALJ failed to properly review the medical opinions in the record, including the opinion of her treating physician, John Gernert, M.D., consultative examiner Jeffrey Summers,

M.D., consultative examiner Eva Misra, M.D., and consultative examiner Ellen Denny, Ph.D. [*Id.* at 17–20]. Further, Plaintiff claims that although the ALJ afforded great weight to the opinions of the nonexamining state agency consultants, James Millis, M.D. and Carol Lemeh, M.D., the ALJ failed to include the environmental limitations assessed in their opinions. [*Id.* at 21].

Next, Plaintiff challenges the ALJ's finding that her COPD was not a severe impairment, as well as the ALJ's subsequent failure to include any limitations that accounted for Plaintiff's respiratory issues. [*Id.* at 21–24]. Plaintiff also alleges that the ALJ improperly concluded that she has past relevant work, and that the ALJ's Step Five determination is not supported by substantial evidence. [*Id.* at 24–26]. Lastly, Plaintiff claims that the ALJ improperly failed to apply the "advanced age" category. [*Id.* at 26]. The Court will address Plaintiff's specific allegations of error in turn.

### A.  Medical Opinions

#### 1.  Dr. Gernert

Plaintiff challenges the ALJ's assignment of little weight to a portion of Dr. Gernert's opinion, as well as the subsequent exclusion from the RFC determination of the sitting limitations assessed in this portion of the opinion. [Doc. 19-1 at 17–18]. However, the Commissioner asserts that the ALJ properly only afforded great weight to the portions of Dr. Gernert's opinion which were supported by the record. [Doc. 21 at 9].

Plaintiff began treatment with Dr. Gernert on June 5, 2013 to address bilateral foot pain due to her gout. [Tr. 387]. Plaintiff continued to see Dr. Gernert on June 19, 2013 [Tr. 386], and on July 22, 2013 [Tr. 385]. Then, on October 8, 2013, Dr. Gernert completed a Medical Source Statement of Plaintiff's ability to perform work-related activities. [Tr. 378–83]. Dr. Gernert opined that Plaintiff could sit, stand, and walk for four hours at one time without interruption and

for four hours total in an eight-hour workday. [Tr. 379]. Additionally, Dr. Gernert found that Plaintiff did not require the use of a cane to ambulate [*Id.*], and that she could frequently operate foot controls with both feet [Tr. 380]. Lastly, Dr. Gernert opined that Plaintiff could frequently climb stairs and ramps, balance, stoop, kneel, crouch, or crawl, and that she could only occasionally climb ladders or scaffolds. [Tr. 381].

The ALJ reviewed Dr. Gernert's opinion and ultimately gave great weight to the portion of Dr. Gernert's Medical Source Statement finding that Plaintiff could stand and walk for only four hours and did not require a cane to ambulate, as these opinions were consistent with the record. [Tr. 19]. However, the ALJ assigned little weight to Dr. Gernert's opinion that Plaintiff could not sit for more than four hours because it was outside the scope of Dr. Gernert's expertise as a podiatrist. [*Id.*]. The ALJ further noted that Dr. Gernert's opinion was based on three examinations in June and July of 2013, that Plaintiff's bilateral foot pain was controlled with steroid injections and Voltaren gel, and Plaintiff did not return to see Dr. Gernert. [*Id.*].

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[1] However, the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ

---

[1] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

The ALJ is not required to explain how she considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

Plaintiff asserts that the ALJ's "reason for this weight determination is nonsensical, as the ALJ fail[ed] to explain how standing and walking is within the scope of Dr. Gernert's expertise, yet somehow sitting is not." [Doc. 19-1 at 17]. Therefore, Plaintiff claims that the ALJ's "failure to adopt this sitting limitation without explanation is improper picking and choosing of [the] record." [*Id.* at 18].

The Commissioner maintains that the ALJ properly considered Dr. Gernert's specialty in evaluating the opinion and found that opinion on the ability to sit is not within a podiatrists' specialization. [Doc. 21 at 10]. Further, the Commissioner alleges that the ALJ also provided several additional reasons for why she assigned little weight to the opined sitting limitation: that Dr. Gernert based his opinion on three examinations for bilateral foot pain secondary to gout, Plaintiff's pain was subsequently controlled with steroid injections, and Plaintiff never returned to

Dr. Gernert—although she complained of gout at her consultative examination with Dr. Misra in November 2013. [Doc. 21 at 10].

"The ALJ may not pick and choose portions of opinions that support his findings without providing a clear analysis of why certain portions are rejected while other are accepted." *Perez v. Comm'r of Soc. Sec.*, No. 1:17-cv-2311, 2018 WL 5620094, at *14 (N.D. Ohio Oct. 30, 2018). However, in the present case, the ALJ clearly stated her reasoning for assigning little weight to Dr. Gernert's opinion regarding Plaintiff's ability to sit. First, the ALJ considered Dr. Gernert's specialty as a podiatrist, and also noted that Plaintiff only had three examinations with Dr. Gernert. Podiatrists are considered "acceptable medical source[s]" under 20 C.F.R. § 416.913(a) "for establishing impairments of the foot, or foot and ankle only." *See Patterson v. Colvin*, No. 1:14-CV-1132, 2015 WL 4644603, at *14 n.5 (N.D. Ohio Aug. 4, 2015). Accordingly, "[a]s a podiatrist, the scope of [Dr. Gernert's] medical evaluation was limited to impairments of her feet." *See Guarente v. Berryhill*, No. 16-cv-12003, 2017 WL 3621078, at *6 (D. Mass. Aug. 23, 2017).

Therefore, the ALJ properly found that this opinion on Plaintiff's ability to sit was outside of the scope of Dr. Gernert's expertise as a podiatrist. *See, e.g.*, *Milliman v. Berryhill*, No. 16-1279-LPS-MPT, 2017 WL 3912830, at *12 (D. Del. Sept. 7, 2017) (affirming assignment of no weight to treating physician's opinion, in part because "[t]he ALJ determined that . . . [the] podiatrist opined outside the scope of his expertise, especially regarding plaintiff's functional limitations [including the ability to sit] and diabetic neuropathy"); *Sobolewski v. Apfel*, 985 F. Supp. 300, 312 (E.D. N.Y. Nov. 19, 1997) ("Because Dr. Coombs [a podiatrist] lacked the qualifications to opine on plaintiff's capacity to sit or lift, it is clear that, to the extent that his non-medical opinion purported to discuss plaintiff's limitations other than as caused by the condition of her feet, his opinion should have been accorded little weight. Dr. Coombs was simply not

qualified to opine that plaintiff could sit or lift without limitation . . . .").

The ALJ also noted that Plaintiff's gout—her chief complaint causing bilateral foot pain—was subsequently controlled through treatment. Further, by discussing that Dr. Gernert's opinion was based on three examinations over a two-month period, and that Plaintiff failed to return for a follow-up appointment despite complaining of gout pain, the ALJ properly considered both "the length of the treatment relationship," as well as "the nature and extent of the treatment relationship." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

Accordingly, the Court finds that ALJ provided "good reasons" for giving the opinion of Plaintiff's treating podiatrist, Dr. Gernert, less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). The ALJ properly considered Dr. Gernert's expertise as a podiatrist, as well as Plaintiff's treatment history and the nature of the treatment relationship. Therefore, Plaintiff's allegation of error does not constitute a basis for remand.

### 2. Dr. Misra

Plaintiff alleges that the ALJ improperly found that Dr. Misra's opinion was entitled to little weight, as "the ALJ's assertion that Dr. Misra's opinion was based on [Plaintiff's] subjective complaints of gout is simply unfounded and unsubstantiated with the actual medical record, which indicates plenty of objective findings . . . ." [Doc. 19-1 at 19]. The Commissioner claims that the ALJ properly resolved an inconsistency in the record, and "identified other evidence that supported the finding that Plaintiff's ability to sit, stand, and walk were not as limited as opined by Dr. Gernert and Dr. Misra." [Doc. 21 at 10].

Dr. Misra consultatively examined Plaintiff on November 11, 2013. [Tr. 398]. Dr. Misra performed a physical examination and noted that she reviewed certain medical records. [Tr. 398–

400].  Dr. Misra opined that Plaintiff retained the capacity to occasionally lift and carry, including upward pulling, for up to one-third to two-thirds in an eight-hour workday, to a maximum of ten pounds.  [Tr. 400].  Additionally, Dr. Misra found that Plaintiff could frequently lift and carry up to ten pounds in an eight-hour workday.  [*Id.*].  Lastly, Dr. Misra opined that Plaintiff could stand or walk without normal breaks for a total of about four hours in an eight-hour workday, as well as sit without restriction.  [*Id.*].

In the disability decision, the ALJ assigned little weight to Dr. Misra's opinion, specifically with regard to the opinion that Plaintiff was limited to standing and walking for a total of only four hours "because it was based on the claimant's subjective complaints of ongoing symptoms of gout, [which] were not supported by the record corroboration."  [Tr. 19].  The ALJ reviewed Plaintiff's treatment with Dr. Gernert for treatment of her gout with steroid injections, but noted "no evidence of continuing treatment or ongoing difficulties."  [*Id.*].  Further, the ALJ discussed how Dr. Misra's opinion was inconsistent with the medical record, including that Plaintiff "was able to stand up from a chair, and, on and off, the table without difficulty," that her lungs were clear to auscultation on physical examination, that Plaintiff had "full range of motion in her lumbar spine and right leg, with limited range of motion in her left knee," and that "her straight leg raises were negative as were the Babinski, Tinel and Romberg testing."  [Tr. 19-20].  Lastly, the ALJ noted that a pulmonary function test was within normal limits.  [Tr. 20].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c).  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)).  These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability."  *Id.* (citing 20 C.F.R. § 404.1527(c)).  "Other factors 'which tend

to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). In fact, opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Plaintiff contends that the ALJ's reasoning that Dr. Misra's opinion was based on Plaintiff's subjective allegations of gout is not supported by substantial evidence, as Dr. Misra's opinion was based on objective findings. [Doc. 19-1 at 19]. Plaintiff asserts that Dr. Misra indicated that she had access to medical records, and that her notes "indicated that Plaintiff had a mild limp, some decreased ROM with her left knee flexion and left ankle dorsiflexion, as well as a knot on the sole of her foot." [*Id.*]. Therefore, Plaintiff maintains that the ALJ rejected Dr. Misra's opinion because if Plaintiff was found to be limited to sedentary work based on the opined walking and sitting restrictions, then she would have been found to be disabled. [*Id.*].

First, although Dr. Misra detailed that in addition to the physical examination, she reviewed medical records including Plaintiff's "EMR" and a "previous consultation," the ALJ reasonably found that the opinion was primarily based on Plaintiff's subjective allegations of pain related to her gout. [Tr. 400]. Although Plaintiff points to notes of the physical examination indicating that she had a mild limp and decreased range of motion in her left knee and ankle, Dr. Misra also indicated that Plaintiff stated that she has gout, that her "last flare-up was a couple of months ago in her feet," and that "[s]he ranks the pain 6/10 on the pain scale with medications, [which] may

12

all be related to gout." [Tr. 398]. The Sixth Circuit recently upheld an ALJ's assignment of less weight to a consultative examiner's opinion, as the ALJ found that the opinion was based on the claimant's subjective reporting of symptoms, and the opinion was not supported by other objective evidence. *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017). In *Staymate*, the Sixth Circuit reiterated that "[w]e have previously found reasoning that a medical opinion relied too heavily on the claimant's subjective complaints as adequate to support an ALJ's decision to give little weight to the opinion." *Id.* (citing *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013)).

Further, the ALJ detailed how Plaintiff's subjective allegations of bilateral foot pain related to her gout were not supported by the objective medical evidence. The ALJ noted Plaintiff's treatment through steroid injections and subsequent lack of regular treatment from Dr. Gernert. [Tr. 19]; *see* [Tr. 378–87]. Additionally, the ALJ reviewed the results of the examination with Dr. Misra, including that Plaintiff was able to get up from a chair and on and off the table without difficulty, that her lungs were clear to auscultation, that she only had a limited range of motion in her left knee, and that her straight leg raises were negative. [Tr. 399].

Ultimately, the ALJ's rationale for discounting Dr. Misra's opinion is consistent with the regulatory factors for weighing medical opinions and controlling Sixth Circuit authority. *See* 20 C.F.R. § 416.927(c)(2)–(4); *see also Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (finding that substantial evidence supported the ALJ's decision not to give controlling weight to a physician's opinion because the opinion conflicted with the physician's findings, was contradicted by other evidence in the record, and appeared to be based primarily on the claimant's subjective complaints). The ALJ found that Dr. Misra's opinion was based on Plaintiff's subjective allegations and subsequently detailed how the medical record did not support Plaintiff's

13

subjective allegations regarding her gout. *See, e.g.*, *Staymate*, 681 F. App'x at 467 (finding "reasoning that a medical opinion relied too heavily on the claimant's subjective complaints [is] adequate to support an ALJ's decision to give little weight to the opinion"); *Makulski v. Berryhill*, No. 3:17-cv-128, 2018 WL 2144152, at *5 (E.D. Tenn. May 9, 2018) (holding substantial evidence supported ALJ's assignment of partial weight to consultative examiner's opinion, as "the ALJ considered the consistency and supportability of the opinion," when concluding that the consultative examiner heavily relied on the Plaintiff's subjective allegations).

Accordingly, Plaintiff's assignment of error with regard to the weight given to Dr. Misra's opinion is not well-taken.

### 3.    Dr. Denny

Plaintiff asserts that the ALJ's reasoning for assigning little weight to Dr. Denny's opinion is "broad and conclusory," as the ALJ failed to identify which parts of the opinion were based on Plaintiff's subjective allegations and did not "cite to any specific inconsistencies between Dr. Denny's opinion and the record." [Doc. 19-1 at 20].

Dr Denny performed a clinical interview and mental status exam on November 5, 2013, and stated that Plaintiff "usually needs assistance with most tasks," but that "[s]he is sometimes able to complete a task, but often has problems with forgetting and also pain." [Tr. 389]. Dr. Denny reported that Plaintiff displayed a depressed mood, but appeared to be oriented in all four spheres of consciousness, as she correctly identified the date, the approximate time, the location, and the purpose of the examination. [Tr. 389–90]. Dr. Denny also noted that Plaintiff displayed a mild impairment in memory, as well as a mild impairment in attention and concentration. [Tr. 390]. Next, Dr. Denny reported that Plaintiff stated that she has been depressed since her son died in November of 2012, as well as that she suffers from low motivation and energy and social

isolation. [Tr. 391]. Accordingly, Dr. Denny opined that Plaintiff had moderate limitations in her abilities in understanding and remembering, mild limitations in her abilities in sustaining concentration and attention, moderate impairments in interacting with others, and moderate impairments in adapting to changes and requirements. [*Id.*].

The ALJ assigned little weight to Dr. Denny's opinion, finding that "it was only consistent with [Plaintiff's] subjective complaints which were inconsistent with the record, with little objective corroboration." [Tr. 20]. The ALJ noted the results of Plaintiff's mental status examination with Dr. Denny, including that Plaintiff was able to correctly recall two of three words repeated five minutes earlier with prompting, count forward by threes to fifteen, and name four presidents since 1960. [*Id.*]. Additionally, the ALJ found that although Plaintiff reported to Dr. Denny that her depression started after the death of her son, the medical record establishes earlier treatment for her depression. [*Id.*]; *see* [Tr. 260–76].

Here, Dr. Denny noted that she performed a clinical interview, as well as a mental status exam of Plaintiff. [Tr. 388]. While Plaintiff alleges that the ALJ failed to identify what portion of the opinion were "derived from subjective complaints" [Doc. 19-1 at 20], the ALJ reasonably found that Dr. Denny's opinion was primarily based upon Plaintiff's subjective allegations. *See Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017) (finding "reasoning that a medical opinion relied too heavily on the claimant's subjective complaints [is] adequate to support an ALJ's decision to give little weight to the opinion"); *cf. Klusmeier v. Berryhill*, No. 3:16-cv-39, 2017 WL 1066641, at *13 (E.D. Tenn. Mar. 21, 2017) (reviewing an ALJ's treatment of Dr. Denny's opinion in another case, finding that a notation that she reviewed a prior psychological evaluation, as well as letters from Plaintiff's nurse practitioner and social worker, "demonstrate that Dr. Denny did not rely solely on the Plaintiff's self-report in assessing the

Plaintiff's ability to perform work-related activities as found by the ALJ").

Moreover, the ALJ properly considered the extent to which Dr. Denny's opinion was supported by the objective medical evidence, as opposed to Plaintiff's subjective allegations, including inconsistencies between the date of the onset of Plaintiff's depression and Plaintiff's previous "history of controlled symptoms when she was compliant with her doctor's instructions" when examining Plaintiff's affective disorders and anxiety disorders. [Tr. 18]; *see Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Long v. Berryhill*, No. 1:16-cv-485-CHS, 2018 WL 1162621, at *7 (E.D. Tenn. Mar. 5, 2018) (rejecting Plaintiff's argument that the ALJ, after stating that the consultative examiner's opinion was based primarily on Plaintiff's subjective complaints, should have identified the evidence which was inconsistent with the consultative examiner's testimony, as "the ALJ described the relevant evidence that undermined Dr. Chandler's opinion throughout his opinion").

Lastly, the ALJ examined how Dr. Denny's opinion was inconsistent with the record, including the results of Plaintiff's examination. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016) ("Regardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and repackage it as an opinion."); *Makulski v. Berryhill*, No. 3:17-cv-128, 2018 WL 2144152, at *5 (E.D. Tenn. May 9, 2018) (holding substantial evidence supported ALJ's assignment of partial weight to consultative examiner's opinion, as "the ALJ considered the consistency and supportability of the opinion," when concluding that the consultative examiner heavily relied on the Plaintiff's subjective allegations).

Ultimately, the ALJ's reasons for discounting Dr. Denny's opinion are consistent with the regulatory factors for weighing medical opinions and controlling Sixth Circuit authority. *See* 20 C.F.R. § 416.927(c)(2)–(4); *see also Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (finding that substantial evidence supported the ALJ's decision not to give controlling weight to a physician's opinion because the opinion conflicted with the physician's findings, was contradicted by other evidence in the record, and appeared to be based primarily on the claimant's subjective complaints). The ALJ found that Dr. Denny's opinion was based on Plaintiff's subjective allegations, and was not consistent with the record or objective corroboration. [Tr. 20]. *See, e.g.*, *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017) (finding "reasoning that a medical opinion relied too heavily on the claimant's subjective complaints [is] adequate to support an ALJ's decision to give little weight to the opinion"). Accordingly, Plaintiff's assignment of error with regard to the weight given to Dr. Denny's medical opinion is not well-taken.

### 4. Dr. Summers

Plaintiff challenges the ALJ's assignment of little weight to the portion of Dr. Summers's opinion regarding Plaintiff's COPD. [Doc. 19-1 at 18]. Plaintiff claims that the ALJ's reasoning for discounting this portion of the opinion is not supported by substantial evidence. [*Id.*]. The Commissioner asserts that the ALJ properly found that Dr. Summers's opinion that Plaintiff had mild COPD was entitled to little weight. [Doc. 21 at 15].

Dr. Summers performed a consultative examination on April 30, 2013 [Tr. 374]. Dr. Summers noted that Plaintiff reported a history of lower back pain, as well as difficulty breathing, including a diagnosis of COPD. [*Id.*]. On examination, Dr. Summers reported "a few scattered wheezes" in both lungs, good air movement, and that the "expiratory phase of respiration is

prolonged." [Tr. 375]. Dr. Summers noted that Plaintiff reported a longstanding history of tobacco abuse, as well as that she had been treated with various inhalers with modest improvement. [Tr. 374]. Additionally, Dr. Summers stated that Plaintiff "has clinical evidence of mild COPD." [Tr. 376]. Accordingly, Dr. Summers opined that Plaintiff would have difficulty performing strenuous exertion, as well as working in dusty conditions, temperature extremes, and high humidity. [*Id.*].

Ultimately, the ALJ assigned great weight to Dr. Summers's opinion that Plaintiff was limited to lifting and carrying 20 pounds, as well as performing sedentary and low to moderate intensity activities. [Tr. 19]. However, the ALJ assigned little weight to his opinion that Plaintiff has mild COPD, finding it was inconsistent with normal pulmonary function testing and Plaintiff's continued tobacco use. [*Id.*]. Additionally, the ALJ detailed that Plaintiff stated that she was still engaged in work activity. [*Id.*]. The ALJ noted that Plaintiff "had a few scattered wheezes in her bilateral lungs with good air movement and prolonged expiratory phase of respiration." [*Id.*].

The ALJ properly found that Dr. Summers's opinion regarding Plaintiff's COPD was entitled to little weight because of Plaintiff's normal pulmonary function testing. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 469 (6th Cir. 2012) (holding a consultative examiner's opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record"); *Key v. Astrue*, No. 2:10-cv-68, 2011 WL 2491439, at *12 (M.D. Tenn. June 22, 2011) (finding substantial evidence existed to support discounting evidence of treating physician with regard to environmental limitations, as Plaintiff had a normal chest x-ray and continued to smoke), *report and recommendation adopted by*, 2011 WL 3475482 (M.D. Tenn. Aug. 9, 2011); *see also* 20 C.F.R. § 404.1527(c) (directing that an ALJ evaluates a non-treating source opinion by considering the supportability of the opinion). The ALJ noted the results of Plaintiff's examination with Dr. Misra on November 18, 2013, where

Plaintiff's pulmonary function test was within normal limits and her lungs were clear to auscultation. [Tr. 20]; *see* [Tr. 393–397]. Moreover, a pulmonary function test from May 23, 2012 was within normal limits, despite Plaintiff's complaints of difficulty breathing [Tr. 288]. Lastly, the ALJ noted that during her examination with Dr. Summers, Plaintiff exhibited good air movement in her lungs, although combined with a prolonged expiratory phase of respiration [Tr. 19].

Additionally, the ALJ discounted Dr. Summers's opinion due to Plaintiff's treatment history and continued tobacco usage. The ALJ detailed that Plaintiff admitted to smoking one pack of cigarettes a day. [Tr. 19]. "In addition[,] the Plaintiff['s] refusal to quit smoking belies [her] objection to being around chemicals, fumes and smoke." *Gutierrez v. Astrue*, No. 09-2149, 2011 WL 528924, at *9 (W.D. Ark. Jan. 28, 2011) (citing *Nichols v. Comm'r of Soc. Sec.*, No. 1:09-cv-1091, 2010 WL 5178069, at *3 (W.D. Mich. Nov. 18, 2010), *report and recommendation adopted by*, 2010 WL 5178033 (W.D. Mich. Dec. 15, 2010)); *see, e.g.*, *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988); *Pichey v. Colvin*, No. 2:15-cv-37, 2016 WL 6566681, at *6 (M.D. Tenn. Nov. 4, 2016).

As Dr. Summers was not a treating physician, the ALJ had no heightened articulation requirement as to his opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[E]ven if the purpose of the reasons-giving requirement in § 404.1527(d)(2) applies to the entire regulation, the SSA requires ALJs to give reasons for only treating sources."). The ALJ properly found that the portion of Dr. Summers's opinion stating that Plaintiff had mild COPD was entitled to little weight because of Plaintiff's continued tobacco use and normal pulmonary function test. Therefore, Plaintiff's arguments regarding Dr. Summers's opinion do not constitute a basis for remand.

### 5.      Dr. Millis and Dr. Lemeh

Plaintiff challenges the ALJ's failure to include environmental limitations in her RFC, despite the assignment of great weight to the opinions of Dr. Millis and Dr. Lemeh.  [Doc. 19-1 at 22].  However, the Commissioner asserts that the ALJ maintains the ultimate responsibility to determine Plaintiff's RFC, and is not required to adopt an opinion wholesale.  [Doc. 21 at 15].

Dr. Millis reviewed the evidence of record at the initial level of the agency's review, and opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and stand and/or walk, as well as sit, for a total of about six hours in an eight-hour workday.  [Tr. 81].  Dr. Millis opined that Plaintiff could frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, and that Plaintiff could occasionally climb ladders, ropes, or scaffolds.  [*Id.*].  Lastly, Dr. Millis found that Plaintiff could have unlimited access to extreme heat, wetness, humidity, noise, vibration, or hazards, but that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  [Tr. 82].  Dr. Millis stated that the opined environmental limitations were due to Plaintiff's COPD.  [*Id.*].

At the reconsideration level of the agency's review, Dr. Lemeh opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, could stand and/or walk for a total of five hours, and sit for a total of six hours in an eight-hour workday.  [Tr. 97].  Further, Dr. Lemeh found that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl.  [Tr. 98].  With respect to Plaintiff's environmental limitations, Dr. Lemeh opined that Plaintiff could have unlimited access to extreme cold or heat, wetness, humidity, noise, or hazards, but that she should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, or poor ventilation.  [Tr. 98–99].

In the disability decision, the ALJ assigned great weight to the opinions of the nonexamining state agency consultants, finding that they "were generally consistent with the weight of the evidence." [Tr. 19]. The ALJ noted that Dr. Millis opined that Plaintiff could perform a mildly diminished range of work at the light exertional level, and that Dr. Lemeh affirmed the opinion of Dr. Millis. [*Id.*].[2] However, the ALJ did not include any environmental limitations in the RFC determination. [Tr. 15].

Ultimately, when an ALJ fails to incorporate all of the limitations opined from a medical source who received great weight, "it does not follow that the ALJ's explanation is, therefore, procedurally inadequate, or that the RFC was not supported by substantial evidence." *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013); *see Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides "great weight" to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") (citing *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13–cv–00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)).

While Plaintiff challenges the ALJ's failure to include the environmental limitations opined by the nonexamining state agency consultants—that she should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, or poor ventilation—both Dr. Millis and Dr. Lemeh stated that the opined environmental limitations were based on Plaintiff's COPD. "To the extent an ALJ determines that an identified impairment, severe or otherwise, does not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusion.'" *Branham*

---

[2] The Court notes that the ALJ incorrectly referred to Dr. "Mills" in the disability decision. [Tr. 19].

*v. Colvin*, No. 14-CV-12454, 2015 WL 5719674, at \*6 (E.D. Mich. Sept. 30, 2015) (quoting *Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at \*3 (E.D. Mich. July 18, 2013)).

During the disability determination, the ALJ reviewed in detail why she did not find the medical evidence of record to support a finding that Plaintiff's COPD affected her ability to work. [Tr. 12–13]. Specifically, the ALJ found that Plaintiff's COPD was not a severe impairment and that the opined RFC "more than fully accommodates any minimal limitations," due to Plaintiff's continued smoking, normal pulmonary function testing, as well as that her "COPD symptoms were controlled with medications along with a daily nebulizer treatment." [*Id.*]. Moreover, as the Court has already detailed, when discussing Dr. Summers's opinion, the ALJ gave little weight to the portion of the opinion that Plaintiff had mild COPD. [Tr. 19].

Therefore, although the ALJ assigned great weight to Dr. Millis and Dr. Lemeh's opinions, she appropriately detailed her reasoning for not including opined environmental limitations due to Plaintiff's COPD throughout the opinion. *Price v. Comm'r of Soc. Sec.*, No. 14-cv-13662, 2016 WL 3193025, at \*2 (E.D. Mich. June 9, 2016) ("The ALJ's decision not to include the restrictions suggests that he did not intend to adopt that limitation. . . . Furthermore, the Court has reviewed the ALJ's order and the evidence as a whole, and finds that the ALJ's decision not to incorporate those limitations into the RFC was supported by substantial evidence."). Further, as the Court will later discuss, substantial evidence supports the ALJ's decision to not include any environmental limitations in the RFC determination.[3]

The ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding . . . [and] an ALJ does not improperly assume the role of a

---

[3] *See infra* Section V(B).

medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (internal citations omitted). Here, the ALJ properly detailed why Plaintiff's COPD did not support the finding of environmental limitations, and the RFC determination is supported by substantial evidence in the record. Therefore, Plaintiff's assertion that the ALJ's RFC determination did not include all of the exact limitations from Dr. Millis and Dr. Lemeh's opinions, despite the ALJ's assignment of great weight to these opinions, does not constitute a basis for remand.

### B.      COPD and Respiratory Limitations

Plaintiff objects to the ALJ's failure to include environmental limitations accounting for the alleged disabling effects of her COPD, asthma, and respiratory issues in the RFC determination. [Doc. 19-1 at 21–24]. Plaintiff contends that the ALJ's RFC determination "undermines" the opinions of the nonexamining state agency consultants, Dr. Millis and Dr. Lemeh, as the ALJ afforded great weight to these opinions but subsequently failed to include opined environmental limitations. [*Id.* at 22]. Additionally, Plaintiff claims that the ALJ also failed to properly consider the opinion of Dr. Summers, despite the ALJ also affording great weight to the consultative examiner's opinion. [*Id.* at 22–23]. Lastly, Plaintiff asserts that the medical record supports "that Plaintiff has respiratory impairments that should have been accounted for in the RFC." [*Id.* at 23].

However, the Commissioner maintains that the ALJ properly found that while Plaintiff's COPD was a medically determinable impairment, neither her COPD or her asthma caused severe enough restrictions to affect Plaintiff's ability to work. [Doc. 21 at 13–16]. Further, the Commissioner states that the ALJ reviewed the medical record regarding Plaintiff's respiratory impairments to find that any environmental limitations were unnecessary, due to "Plaintiff's

regularly normal pulmonary function tests, her lack of any hospitalizations or emergency room care for her breathing, her reported daily activities, and her continued voluntary exposure to the pulmonary irritant of cigarette smoke." [*Id.* at 15–16].

It is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and non-severe impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").[4]  Therefore, the Court notes that any failure by the ALJ to classify Plaintiff's COPD as a severe impairment at Step Two would be harmless error.

However, Plaintiff challenges the ALJ's failure to include any environmental limitations in the RFC to account for her severe impairment of asthma, as well as the non-severe impairment of COPD.  Plaintiff asserts that the medical record, including several opinions to which the ALJ assigned great weight, support environmental limitations due to her respiratory impairments.

---

[4] In the disability decision, the ALJ first identified several severe impairments, including spine disorder with grade I spondylolisthesis at L5/S1, osteoarthrosis and bursitis in the left knee, asthma, affective disorder, and anxiety disorder.  [Tr. 12].  However, the ALJ proceeded to consider all medically determinable impairments, both severe and non-severe, in the continued disability determination.

A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairments may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal quotation marks and citations omitted). Ultimately, an ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (citation omitted).

In the disability decision, the ALJ properly explained her reasoning for not finding Plaintiff's COPD to be a severe impairment. During her Step Two analysis, the ALJ stated that Plaintiff's "COPD symptoms were controlled with medications along with a daily nebulizer treatment," as well as that Plaintiff "was smoking up to five cigarettes each day" and that a May 23, 2012 pulmonary function test was normal. [Tr. 12]. Accordingly, the ALJ found that the RFC "more than fully accommodates any minimal limitations" that Plaintiff may have because of her COPD. [Tr. 13]. *See, e.g.*, *Vetetoe v. Astrue*, No. 3:13–00008, 2014 WL 3619583, at *14 (M.D. Tenn. July 22, 2014) (noting that "[a]sthma and COPD are not synonymous. Rather, COPD is a disease that may be characterized by, inter-alia, the specific impairment of asthma"), *report and recommendation adopted by*, 2014 WL 4095896 (M.D. Tenn. Aug. 19, 2014).

Further, the ALJ reviewed the medical record with respect to Plaintiff's asthma, which the ALJ found to be a severe impairment. The ALJ noted a February 5, 2013 office visit in which Plaintiff was negative for cough, dyspnea, hemoptysis and frequent wheezing. [Tr. 18]; *see* [Tr.

278].  Further, the ALJ repeated Plaintiff's normal pulmonary function test on May 23, 2012.  [Tr. 18]; *see* [Tr. 286–90].  Additionally, the ALJ noted that Plaintiff's symptoms were controlled with inhalers and a nebulizer, and that [t]here was no evidence that [Plaintiff] was hospitalized for asthma or any pulmonary disorder or was prescribed supplemental oxygen."  [Tr. 18].

The ALJ also noted Plaintiff's failure to stop smoking, and although she testified that she stopping smoking in 2013, the ALJ found that Plaintiff's medical records from Cherokee Health Systems demonstrated that she continued to smoke as recently as July 2015.  [Tr. 17]; *see* [Tr. 585].  "Plaintiff's failure to stop smoking—contrary to her physicians' repeated recommendations—weighs against finding severe limitations from her COPD."  *Barringer v. Comm'r of Soc. Sec.*, No. 13-CV-12746, 2014 WL 4065475 at *13 (E.D. Mich. Aug. 18, 2014) (citing *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)); *see also Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 498 (6th Cir. 2014) ("[T]he ALJ noted that parts of Blaim's testimony were contradicted by the record, and that Blaim's conservative treatment schedule and persistent refusal to take his medications or quit smoking—as his doctors repeatedly advised—suggested that his condition was not as serious as Blaim made it out to be."); *Brown v. Soc. Sec. Admin.*, 221 F.3d 1333 (table), 2000 WL 876567, at *1 (6th Cir. 2000) ( "Although Brown suffers from chronic obstructive pulmonary disease, his heavy smoking habit indicates that the condition is not disabling.") (citing *Sias*, 861 F.2d at 480).

Although Plaintiff points to alternative evidence that she claims is consistent with the finding of environmental limitations due to her respiratory impairments, "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alteration in original) (internal citation omitted).  This Court decides only

whether there was substantial evidence to support the ALJ's decision. In that event, the Court is to defer. *Id.* The ALJ is responsible for considering all the medical opinions of record and "does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering" a claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).

Accordingly, the ALJ properly found that Plaintiff's COPD did not constitute a severe impairment, and that the RFC determination properly accounted for any limitations stemming from Plaintiff's COPD. With respect to Dr. Summers's opinion, although he detailed Plaintiff's mild COPD, as well as scattered wheezes and prolonged expirations [Tr. 374–76], the ALJ properly noted that this opinion was inconsistent with Plaintiff's normal pulmonary function test and continued tobacco use [Tr. 19]. The ALJ was not required to incorporate all of the limitations in Dr. Millis and Dr. Lemeh's opinions, as the environmental limitations were based upon a finding of Plaintiff's COPD, and the ALJ detailed throughout the opinion why the medical record did not support limitations due to Plaintiff's COPD. Ultimately, the ALJ found that any environmental limitations were negated by Plaintiff's normal pulmonary function tests, lack of hospitalization for her breathing, continued smoking, and lack of proper treatment. Therefore, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

### C.      Past Relevant Work

Plaintiff contends that the ALJ improperly found that she had past relevant work as a "companion," as her monthly earnings did not constitute substantial gainful activity.  [Doc. 19-1 at 24–25].  In addition, Plaintiff alleges that the ALJ improperly asked the VE to classify "sitting with the elderly man" as relevant past work.  [*Id.* at 25].

The Commissioner maintains that the monthly earnings, which Plaintiff alleges establish that her past work experience did not qualify as substantial gainful activity, actually determine whether a claimant is eligible for benefits at Step One—not whether past relevant work is substantial gainful activity.  [Doc. 21 at 17].  Therefore, the Commissioner asserts that the ALJ reasonably found that Plaintiff's past work was substantial and gainful.  [*Id.*].  Lastly, the Commissioner states that the ALJ made an alternative finding at Step Five that even if Plaintiff could not perform her past relevant work, there was other work within the national economy that she could perform.  [*Id.*].

In the disability decision, the ALJ found that Plaintiff was capable of performing past relevant work as a "Companion," and that "[t]his work does not require the performance of work-related activities precluded" by Plaintiff's RFC.  [Tr. 20].  During the disability hearing, Plaintiff described her past work history of sitting with an elderly man, which the VE classified as a "companion."  [Tr. 56].  Plaintiff claims that the record indicates that she earned $8,058 in 2011 and $9,577 in 2012.  [Doc. 19-1 at 25]; *see* [Tr. 164–78].  Therefore, Plaintiff alleges that "it was erroneous for the ALJ to even ask the VE to classify the job, as it was not a job performed a[s] substantial gainful activity."  [Doc. 19-1 at 25].

As the Court has previously detailed, a claimant will be deemed disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2) (A), 1382c(a)(3)(B). "Past relevant work" is defined as work that claimants have done within the past fifteen years that is "substantial gainful activity," and that lasted long enough for the claimant to learn to do it. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (citing 20 C.F.R. § 404.1560(b)(1)). The Regulations also set an average monthly-earnings threshold to qualify as substantial gainful activity. *See* 20 C.F.R. § 404.1574(b)(3)(i). For 2011 and 2012, the time period at issue, the monthly threshold for substantial gainful activity was $1640 and $1690, respectively. *See* https://www.ssa.gov/oact/cola/sga.html.

"In sum, consistent with other courts which have so held, the Court holds that a rebuttable presumption arises that past relevant work is not substantial gainful activity when the evidence shows that a disability claimant's earnings from that past relevant work are below the threshold set by the regulations." *Brown v. Colvin*, No. 13–13917, 2015 WL 1530769, at *4–6 (E.D. Mich. Mar. 31, 2015) (finding that the ALJ erred by finding that the plaintiff could perform his past relevant work because his past work as a fast food worker never rose to the level of substantial gainful activity, and thus could not be considered past relevant work); *see, e.g.*, *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 397–98 (6th Cir. 2010) ("finding "there is a presumption against finding that a claimant engaged in substantial gainful activity if the claimant's monthly earnings from the work falls below a specified amount").

Ultimately, the ALJ erred by finding that Plaintiff's work as a companion qualified as past relevant work, as Plaintiff's monthly earnings did not constitute substantial gainful activity. Plaintiff claims that she only earned $8,058 in 2011, and $9,577 in 2012, with the amounts for both years well below the monthly-earning threshold. *See* [Tr. 165]. During the disability hearing,

the ALJ questioned about her earnings for "sitting with the elderly man," and Plaintiff testified that she agreed to work 20 hours for $150. [Tr. 56]. Although the overall rate was unclear, the ALJ then asked the VE to classify the best match of Plaintiff "sitting with the elderly man." [*Id.*]. However, the ALJ did not make findings with respect to whether Plaintiff's previous work activity qualified as substantial gainful activity, or discuss the effect of Plaintiff's testimony regarding her monthly earnings. Therefore, the ALJ improperly found that Plaintiff was able to perform her past relevant work as a companion.

When error is committed at Step Four, "the Commissioner's decision can be affirmed only if the ALJ also found in the alternative, with the support of substantial evidence, that Plaintiff was capable of making an adjustment to 'other work' existing in significant numbers in the national economy." *Prater v. Astrue*, No. 4:08-CV-83, 2010 WL 1257882, *9 (E.D. Tenn. Mar. 3, 2010) (internal citations omitted), *report and recommendation adopted by*, 2010 WL 1257880 (E.D. Tenn. Mar. 25, 2010); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(1)).

Here, the ALJ also made an alternative finding that although Plaintiff was capable of performing her past relevant work as a companion, there were sufficient jobs existing in the national economy that she was also able to perform. [Tr. 21]. Specifically, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work, experience, and RFC—to which the VE responded that such an individual was capable of performing the requirements of a packager, with 361,000 jobs nationally; a machine tender, with 76,000 jobs nationally; and as an assembler, with 92,000 jobs nationally. [Tr. 21–22]; *see* [Tr. 57–58]. The ALJ found that based upon this testimony, Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [Tr. 22].

Accordingly, any error regarding Plaintiff's past relevant work was harmless, as the ALJ

appropriately found that significant work existed in the national economy that Plaintiff could perform. *See, e.g.*, *Michael v. Comm'r of Soc. Sec.*, No. 2:18-cv-131, 2018 WL 3490822, at *6 (S.D. Ohio July 20, 2018) ("It is thus well-established that if an ALJ makes additional findings at step five that are supported by substantial evidence, any error at step four is harmless."), *report and recommendation adopted by*, 2018 WL 4223151 (S.D. Ohio Sept. 5, 2018); *Dunnett v. Comm'r of Soc. Sec.*, No. 12–10930, 2013 WL 460445, at *15 (E.D. Mich. Aug. 29, 2013) ("The ALJ did not end her analysis at step four—she continued to step five, and found that Plaintiff could perform other work that existed in significant numbers in the national economy. As such, an error at step four—*if any*—was harmless.") (emphasis in original).

### D.    Borderline Age Category

Lastly, Plaintiff contends that she was less than two weeks from the "advanced age" category at the time the ALJ issued her decision, and thus, the ALJ should have applied the regulations for a person of advanced age. [Doc. 19-1 at 26]. Additionally, Plaintiff asserts that under this advanced age category, she would have been found disabled under Medical Vocational Rule 202.01 or 202.02. [*Id.*].

During the disability decision, the ALJ found that Plaintiff was 51 years old, which is defined as an individual closely approaching advanced age, on the date that the application was filed. [Tr. 21]. The ALJ also noted Plaintiff's high school education and ability to communicate in English. [*Id.*]. Ultimately, the ALJ found that transferability of job skills was not material because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," regardless of her transferrable job skills. [*Id.*].

"Age" is defined in 20 C.F.R. §§ 404.1563(a) and 416.963(a) as being the claimant's "chronological age." In a disability determination, the Commissioner considers an individual's

"chronological age in combination with [a claimant's RFC], education, and work experience."  20

C.F.R. §§ 404.1563(a) and 416.963(a).  Additionally, age is a factor in determining an individual's

ability to adjust to other work, where "advancing age" is considered "to be an increasingly limiting

factor in the person's ability to make such an adjustment."  *Id.*  Specifically, the regulations make

the following distinctions:

> (d) Person closely approaching advanced age. If you are closely
> approaching advanced age (age 50–54), we will consider that your age
> along with a severe impairment(s) and limited work experience may
> seriously affect your ability to adjust to other work.

> (e) Person of advanced age. We consider that at advanced age (age 55 or
> older), age significantly affects a person's ability to adjust to other work.
> We have special rules for persons of advanced age and for persons in this
> category who are closely approaching retirement age (age 60 or older). See
> § 404.1568(d)(4).

20 C.F. R. §§ 404.1563(d)-(e); and 416.963(d)-(e).

However, under 20 C.F.R. § 404.1563(b), the Social Security Administration "will not

apply the age categories mechanically in a borderline situation."  The Social Security

Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX) states that a

borderline situation exists when: (1) the claimant's age is within a few days or months of a higher

age category; and (2) use of the higher age category would result in a finding of

disability.  *Borderline Age*, HALLEX I-2-2-42, 2016 WL 1167001, at *1 (Mar. 25, 2016).   To

determine if a borderline age situation exists in the current case, the Court must determine whether

"using the older age category would result in a determination or decision that [Plaintiff was]

disabled."  20 C.F.R. §§ 404.1563(b) and 416.963(b).

Here, Plaintiff was in a borderline age situation, as she was less than two weeks from the

"advanced age" category at the time of the ALJ's decision.  Therefore, Plaintiff argues that she

would have been founded disabled under Medical-Vocational Rules 202.01 or 202.02. At step five of the disability determination, the Commissioner has the burden of proving that other work exists in the national economy that the claimant can perform giving his RFC and vocational factors, including age, education, and work skills. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Generally, the Commissioner may meet her burden by applying the medical-vocational guidelines ("the grid"), which indicates whether a claimant is "disabled" or "not disabled" based upon the claimant's age, education, and whether he has transferable job skills. *Id.* (citing *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990)).

Medical–Vocational Rule 202.01 directs the ALJ to enter a finding of disability when the claimant is a person of advanced age, with limited education, who cannot return to their prior unskilled work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2 (Rule 202.01). Medical-Vocational Rule 202.02 directs a finding of disability when the claimant is a person of advanced age, with limited education, who cannot return to their skilled or semiskilled previous work experience, as the skills are not transferrable. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2 (Rule 202.02).

However, Plaintiff did not have a limited education, as the ALJ found that she "has at least a high school education and is able to communicate in English." [Tr. 21]. Under 20 C.F.R. § 416.964(b)(3), which defines education as a vocational factor, a limited education is "a 7th grade through the 11th grade level of formal education." During the disability hearing, Plaintiff testified that she graduated high school and had briefly attended vocational school. [Tr. 43]. Plaintiff does not allege that the ALJ improperly found that she had at least a high school education, and therefore, Plaintiff could not be found to be disabled under Medical-Vocational Rule 202.01 or

202.02.

Additionally, the Court notes that the ALJ did not mechanically apply the Medical-Vocational Rules. As the ALJ detailed in her decision, the ALJ used the Medical-Vocational Rules only as a "framework," and considered Plaintiff's limitations resulting from her severe impairments and the testimony of the VE. [Tr. 21]. Further, the ALJ was aware of Plaintiff's age, as the ALJ cited to Plaintiff's date of birth, as well as 20 C.F.R. § 416.963. [Tr. 21]; *see Ramsey v. Soc. Sec. Admin.*, No. 3:14-1917, 2016 WL 727547, at *6, n.5 (M.D. Tenn. Feb. 24, 2016) (noting a citation to 20 C.F.R. § 404.1563 indicates that the ALJ "was plainly aware" of Plaintiff's date of birth, and "[t]he fact that the ALJ made such findings while referring to § 404.1563 has been noted to provide some indication that the ALJ considered the arguably borderline age situation"), *report and recommendation adopted by*, 2016 WL 1044973 (M.D. Tenn. Mar. 16, 2016).

Lastly, "[a]lthough ALJs are obligated by this text [20 C.F.R. § 404.1563 or 20 C.F.R. § 416.963—evaluating age as a vocational factor] not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination. Rather, the regulation merely promises claimants that the Administration will 'consider' veering from the chronological-age default in borderline situations." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). The Sixth Circuit in *Bowie* considered whether "additional vocational adversities" existed to justify placing the plaintiff in the older age category, and provided an example that "substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the 'younger individual' age category who is 49 years and 11 months, unskilled,

sedentary, barely literate, and whose only previous work experience was in the fishing industry." *Id.* at 401.

Similarly, in *Caudill v. Comm'r of Soc. Sec.*, the Sixth Circuit also examined whether significant additional vocational adversities were in place to require discussion of a claimant's borderline age category. 424 F. App'x 510, 516 (6th Cir. 2011). The Sixth Circuit in *Caudill* compared the hypothetical set forth in *Bowie* to the plaintiff who was approximately 54 years and 10 months old at the time of the ALJ's decision, had a second-grade reading level, and whose only relevant work experience was in the coal mining industry, yet whose borderline age situation was not mentioned in the ALJ's decision. 424 F. App'x at 518. However, the disability determination of the plaintiff in *Caudill* was found to have been properly decided under his chronological age classification, without a discussion of his borderline age. *Id.*

In the present case, Plaintiff does not point to sufficient "additional vocational adversities" that would require an explicit borderline age analysis by the ALJ. *Bowie*, 539 F.3d at 401. Here, the ALJ found that Plaintiff has a high school education and is able to communicate in English. [Tr. 21]. Further, the ALJ utilized the testimony of the VE to question whether Plaintiff could perform the modified range of light work, and found that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations at the unskilled light level, with an SVP of two, including as a packager, machine tender, and as an assembler. [Tr. 21–22].

Ultimately, the Sixth Circuit has stated that "an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons for arriving at a particular age categorization." *Bowie*, 539 F.3d at 400–01. Further, "[t]he fact that age categories are not to be applied mechanically, [ ] obviously does not mean that a claimant must be

moved mechanically to the next age category whenever her chronological age is close to that category." *Van der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 528 (6th Cir. 2006); *see Caudill*, 424 F. App'x at 516–18 (holding ALJ did not err in categorizing plaintiff as an individual "closely approaching advanced age," rather than person of "advanced age," even though the plaintiff was fifty-four years and ten months at the time of the hearing decision). Therefore, the Court finds that the ALJ's decision to use Plaintiff's chronological age does not constitute a basis for remand.

## V.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 19**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge